(No. 5204. October 29, 1929.)

AMANDA B. SMITH and C. LUDELL SMITH, Respondents, v. INDEPENDENT SCHOOL DISTRICT No. 26J, Appellant.

[282 Pac. 84.]

J. B. Eldridge, for Appellant.

Frank T. Wyman, for Respondents.

W. A. BABCOCK, Commissioner. — This action was brought by the respondents, Amanda B. Smith and Miss Ludell C. Smith, her daughter, in the district court of Elmore county, to recover from the appellant, Independent School District No. 26J of Elmore county, $1700 as the purchase price for a certain tract of land sold by the respondents to the district for a schoolhouse site.

By stipulation of counsel and the order of the court the case was transferred to Ada county for trial. The facts in connection with the purchase and sale of the land as they appear from the record are substantially as follows: The school board, at a meeting held August 26, 1920, selected a site for a new schoolhouse which embraced certain lands owned by the respondents. After this meeting of the board and prior to a meeting held September 2, an abstract of a part of this property was furnished the district by the respondents, and Mr. Charlie Stout, the attorney for the district, passed upon the title and found it good. This information was given to the Smiths. Miss Smith, acting for herself and on behalf of her mother, went to Mountain Home, the county seat of Elmore county, and paid the taxes and had the abstract brought down to date. Mr. Stout, as attorney for the board, then gave the board a written formal opinion that the title as shown by the abstract was clear. The Smith property consisted of two separate tracts or parcels, one covered by the abstract, for which they were to be paid $1700, and the other consisting of a lot and two half lots, on which the Smiths were unwilling to pay back taxes and assessments, and which they agreed to donate to the district. On September 2, 1920, two separate deeds for the property were prepared by Mr. Stout at his office and executed by the respondents. One of these deeds, covering the greater portion of the property and for which they were to receive $1700, contains the reservation, "excepting taxes for 1920," and the other, covering the donation property,

contains the provision, "subject to all liens and incumbrances." Mr. Stout also prepared a contract for the sale of the property. The respondents then attended the meeting of the board held on September 2, taking the deeds and contract with them. The matter of the purchase was considered by the board, the members thereof examining the deeds and contract, comparing the descriptions, and voted to purchase the property and pay therefor $1700 and authorized the chairman of the board to sign the contract on behalf of the district. The contract was signed in duplicate, and it, together with the deeds, was left with the board to be placed in escrow in the Glenns Ferry bank. No mention is made in the contract of the kind of title appellant was to receive. It was provided that the $1700 was to be paid respondents as soon as the same was available out of the sale of $26,000 of bonds issued by the district and not later than October 15, 1920. On November 20, 1920, the respondents were served with the following notice:

"Mrs. Josephine Corker, President.
"Mrs. Josephine Robertson, Clerk.

"INDEPENDENT SCHOOL DISTRICT 26J,
"Glenns Ferry, Idaho.
"Nov. 9, 1920.
"Mrs. Amanda B. Smith and C. Ludell Smith,
"Boise, Idaho.

"At a regular board meeting held last night, the board decided not to purchase your property, and have authorized me to notify you to that effect and also to release the deeds which you may have at any time you call for same.

"Very respectfully,
"MRS. JOSEPHINE ROBERTSON, Clerk."

The suit was commenced August 20, 1923. The complaint alleges the making of the contract, that respondents were the owners of the property in fee, execution of the deeds, depositing of the deeds in the bank and the tendering of the deeds so deposited at the bank to the appellant. The complaint also contains an allegation that respondents have been able, ready and willing to do and perform all things

required of them by the contract, and if it should transpire that they have failed ·to perform all of the conditions required of them therein it has been through oversight, and that they are now willing and offer to perform the same. The appellant, in its answer to the complaint, denied that the respondents were the owners of the property in fee, denied the execution of the contract, and as an affirmative defense alleged that no resolution was ever passed authorizing Charles H. Walker, chairman of the board of trustees of the school district, to sign the contract for the purchase of the property, and further, set out certain defects in the title consisting of unpaid taxes and outstanding delinquent tax certificates.

The cause was first heard by the Honorable Raymond L. Givens, sitting without a jury. Testimony was taken, and the respondents introduced an abstract of title, brought down to August 20, 1920, the appellant an abstract brought down to March, 1923. From these abstracts detailed objections to the title were made in the record by the attorney for appellant. An interlocutory order or judgment was entered by which it was held that the contract involved was valid and binding upon the parties, that the alleged defects in the title were not fatal but that the title was defective, that appellant was entitled to a title reasonably free from question, and the respondents having offered to perfect the title it was ordered that if respondents should within a reasonable time perfect their title to the premises a final decree should be entered, but upon failure so to do judgment would be entered for the appellant. The respondents perfected their title. In the meantime and before the final decree was entered in the case, Judge Givens became one of the justices of the supreme court of Idaho, whereupon a stipulation was entered into between counsel for the respective parties, as follows:

"The Honorable Raymond L. Givens no longer being a district judge and a retrial and resubmission of this case being necessary, it is hereby stipulated by and between the parties hereto, by their attorneys of record, that the steno-

graphic notes of the evidence taken upon the former trial of this case be transcribed, and that the expense thereof shall be taxed as costs herein; that this case shall thereupon be retried and resubmitted to the above entitled court. . . . . ''

Upon the transcript of the testimony had before Judge Givens, and in pursuance to the above stipulation, the cause was then submitted to the Honorable Ralph W. Adair, Judge, sitting without a jury, who found for respondents, to the effect that the contract involved was valid and binding upon the parties thereto, that respondents at the time of entering into the contract and thereafter were the owners in fee of the property in question, that they deposited deeds therefor conveying the same to the appellant with the Glenns Ferry bank with instructions to deliver them to appellant upon the payment of the purchase price for the property as provided in the contract, that respondents had performed all the conditions of the contract to be performed by them before the commencement of the action and had demanded of appellant the payment of the purchase price for the property and tendered and offered to deliver deeds of conveyance of the property to it. Request for further findings was made by the attorney for appellant, which was denied. Judgment was entered. Appellant made a motion for new trial, which was denied. This appeal is from the judgment and order denying the motion for new trial.

By the specifications of error, the following questions are presented: the right of the vendor under an executory contract for the sale of land to bring an action of specific performance, or for the purchase price upon breach thereof by the vendee; the purchaser's right to rescind the contract on account of defects in the title, and the waiver of such right, and the right of the court to permit the vendor to perfect the title during the trial on objection being made thereto by the vendee. This is not the order in which the questions are raised by the record, but it appears to be the logical arrangement to be adopted for their consideration.

██ It is contended by the appellant that the complaint does not state facts sufficient to constitute a cause of action in that the contract being executory, the remedy for its breach is for damages and not for specific performance or an action for the purchase price. In 25 Cal. Jur., p. 704, sec. 181, we find the remedies of the vendor, when the contract remains executory, in the event of the vendee's breach, stated as follows: (1) That he may stand on the terms of his contract and sue for its breach; (2) remain inactive and retain to his own use moneys paid by the vendee; (3) go into equity and seek specific performance; with the further statement that the vendor retaining legal title, may also go into equity to foreclose and proceed to sell the property for the payment of the purchase money, or he may waive his security and bring an action at law for the purchase money. Citing a large number of California cases sustaining the text. (See, also, *Portner v. Tanner*, 30 Wyo. 85, 30 A. L. R. 624, 216 Pac. 1069.)

I am of the opinion that the respondents did not mistake their remedy and the complaint is not open to the objection urged by appellant.

██ The appellant also contends that the court erred in giving the respondents permission to perfect their title, and takes the position that under the contract the appellant was entitled to title to the property free from reasonable doubt, and, the title being bad, it had a right to rescind and that the letter written to the respondents by the clerk of the board was a sufficient notice of rescission. It is true that the respondents were bound by their contract to convey a good title (aside from the exceptions in the deeds). But it appearing from the record that before the contract was entered into an abstract had been furnished by the respondents to the appellant and the attorney for the appellant had given the board a written opinion to the effect that the title was clear; and all the circumstances surrounding the transaction and the signing of the contract indicate that the board was satisfied with the title and accepted it; and while it may not have waived any defect

in the title—we are satisfied it waived its right to rescind by reason of any defect and was only entitled to have such defects, if any, remedied upon discovery. In other words, the warranty was no longer a condition precedent, entitling it to rescind. (*Dwight v. Cutler*, 3 Mich. 566, 64 Am. Dec. 105; *Easton v. Montgomery*, 90 Cal. 307, 25 Am. St. 123, 27 Pac. 280; *Craig v. White*, 187 Cal. 489, 202 Pac. 648, 652; *Bates v. Smith*, 48 S. D. 602, 205 N. W. 661; *Miller v. Ruzicka*, 109 Neb. 152, 190 N. W. 216.)

█ There was no objection to the title contained in the notice given the respondents by the clerk of the school board and the filing of the answer of the appellant was the first intimation respondents had that it was not satisfied with the title.

Under circumstances similar to the case at bar, the court in *Miller v. Ruzicka, supra,* held that the trial court was justified in giving the plaintiff opportunity to establish and cure his record title against the technical defects complained of, since, under the circumstances and in view of the conditions of the contract and the attitude of the defendants in refusing to perform, and who could, by timely objection, have avoided the delay, it may fairly be held that the plaintiff has perfected his title and tendered his performance within a reasonable time.

In the case of *Black v. American International Corp.*, 264 Pa. St. 260, 107 Atl. 737, at 739, the following language is found:

"An action for the purchase money of land is in legal effect a petition or bill for specific performance of the contract of purchase, and is governed by the same equitable principles."

Also *Portner v. Tanner*, 30 Wyo. 85, 30 A. L. R. 624, 216 Pac. 1072.

It follows, therefore, that the court did not err in giving respondents the right to perfect their title after the appellant raised objections thereto at the trial.

It is also contended by appellant that the court erred in holding that respondents were the owners in fee of the lands

contracted to be sold. In the affirmative defense of the appellant's answer the only defects to the title specifically pointed out relate to unpaid taxes; no other defect is pleaded, and the court found that the district was by its contract to take the property subject to these liens.

At the trial before Judge Givens, which was some three years after the execution of the contract, and long after the filing of its answer, counsel for appellant stated into the record additional objections to the title, pointing out certain alleged defects therein, ten in number. Without going into an analysis or discussion of these alleged defects, I will say that they seem to be extremely technical and trivial, and inasmuch as at the trial before Judge Adair respondents had perfected their title to the lands it is evident that the court did not consider that they were in the case, and he made no finding in regard thereto. (See *Pegg v. Olson,* 31 Wyo. 96, 223 Pac. 223.) I am of the opinion that the court did not err in the finding as to the title of respondents to the property.

It is further contended that the court erred in admitting in evidence the opinion of Mr. Stout. The opinion of Mr. Stout, as attorney for the district, was offered and admitted for the purpose of showing the facts and circumstances attending the execution of the contract and as tending to show the acceptance of the title by the appellant and not as evidence of the title, and I am of the opinion that it was admissible.

It is also contended by the appellant, that the deeds tendered in evidence fail to show the marital status of the grantors and the character of the property, and are insufficient in themselves to convey the title:

I am unable to see any merit in this contention. While it is customary to state the marital status of the grantor in a deed, as that the party is unmarried, or single, or a widow, etc., so far as these recitals aid in determining the identity of the parties they are useful, but such statements are not proof of the fact and are merely descriptive. There is no contention on the part of the appellant that the deeds

did not in fact convey the property, or that there was any want of capacity on the part of the grantors to make the conveyance.

As to that part of the allegation of the affirmative defense, that no resolution was ever passed authorizing the chairman of the board of trustees of the school district to sign the contract, counsel for appellant does not argue the question in his brief. The minute-book of the board of trustees of the district shows that on August 2, 1920, the contract was approved by the unanimous vote of the board, four of the six trustees being present, authorizing the chairman to sign it on behalf of the district.

Appellant also contends that the court erred in sustaining the contract for the reason that there was no proof that the property could be paid for out of the sale of bonds as the contract provided. That part of the contract is as follows: "second party agrees to pay the sum of $1700 as soon as money is available out of the sale of $26,000 of bonds and not later than the 15th day of October, 1920."

Liability was not wholly contingent upon the sale of the bonds, but became absolute on the 15th of October.

I am unable to find any error in the record and recommend that the judgment and order of the court overruling the motion for new trial be affirmed with costs to the respondent.

The foregoing is approved as the opinion of the court and the judgment and order of the court overruling the motion for new trial are affirmed. Costs to respondents.

Budge, C. J., and T. Bailey Lee, Wm. E. Lee and Varian, JJ., concur.

Givens, J., disqualified.