Paul R. STALEY and Suzanne B. Staley,
Plaintiffs-Appellants and
Cross-Appellees,

v.

Paul L. STEPHENS and Carolyn A.
Stephens, Defendants-Appellees and
Cross-Appellants.

No. 3–180–A–5.

Court of Appeals of Indiana,
First District.

May 19, 1980.

Rehearing Denied June 30, 1980.

Vincent J. Heiny, Snouffer, Haller & Colvin, Fort Wayne, for plaintiffs-appellants and cross-appellees.

Grant F. Shipley, Livingston, Dildine, Haynie & Yoder, Fort Wayne, for defendants-appellees and cross-appellants.

ROBERTSON, Presiding Judge.

Paul R. and Suzanne B. Staley (Sellers) commenced an action against Paul L. and Carolyn A. Stephens (Buyers) as a result of Buyers' refusal to complete the purchase of Sellers' property. In their answer, Buyers counterclaimed for damages predicated upon Sellers' failure to tender marketable title. At the close of Sellers' evidence, Buyers moved for judgment on the evidence as provided for by Ind. Rules of Procedure, Trial Rule 50. The trial court granted the motion and found for the Buyers on Sellers' complaint, and additionally, found against the Buyers on their counterclaim. We affirm in part and reverse in part.

There are in essence two issues with which this court must deal. The first concerns the question of how a slight infringement on a side line set back requirement effects marketable title as a matter of law. Secondly, we must address the trial court's denial of Buyers' counterclaim before Buyers had the opportunity to present any evidence on their claim.

The facts pertinent to the decision reveal that the parties contracted for the purchase of a home, and Buyers tendered to the real estate agent $1,000 as earnest money.[1] The Buyers were to receive, at the closing, an abstract of title disclosing marketable title to the real estate. At the time of the original subdivision, the tract was divided into ten lots. A restrictive covenant of this original subdivision required a ten foot side line set back. At a later date, Lot # 10 of the original subdivision was further subdivided, and at the time of re-platting, the side line set back requirements of the Town of New Haven were incorporated by reference into this further subdivision. At that time, the New Haven zoning ordinance required a side yard set back line of 8.5 feet. Sellers' property was located in this second subdivision.

A survey was made of the property as called for by the purchase agreement, and revealed that a portion of Sellers' house was only 8.4 feet from the side line, in violation of the New Haven zoning ordinance. It further provided in the restrictive covenants of this subdivision, that any lot owner could enforce at law or equity any attempt to violate or any violation of the covenants by either injunctive relief or by the recovery of damages.

Upon notification of this defect, Buyers requested that Sellers obtain waivers from the other landowners waiving this side line set back violation. Sellers refused to do this, whereupon Buyers determined that the title was not acceptable and refused to complete the purchase.

1. During the pendency of this action, the earnest money was delivered to the court, which held the funds pending disposition of the cause.

The parties stipulated quite a number of the facts, and among the stipulations was that the Allen County Bar Association had adopted a standard of marketability which indicated that violation of side line set back requirements contained in restrictive covenants should be waived as to residential lots if the improvements in question were completed and in place for at least two years prior to the date of the examination of the title. This standard of marketability, however, was not agreed to by the parties, even though the house was built in 1970.

We first note that the "two year statute of limitations" as adopted by the Allen County Bar Association has no legal effect, unless a contract is specifically referenced to that period, and merely serves as a guide to the parties and the Bar Association itself. The applicable statute of limitations as passed by the General Assembly calls for a twenty (20) year period within which actions must be brought upon contracts in writing other than those for the payment of money. *Ind.Code* 34–1–2–2.

In the recent case of *Shanks v. A. F. E. Industries, Inc.*, (1980) Ind.App., 403 N.E.2d 849, Judge Neal reiterated the proper standard with respect to a motion for judgment on the evidence:

. . . such motion may properly be granted only if there is no substantial evidence or reasonable inferences derived therefrom supporting an essential element of the claim, a complete failure of proof, and that in considering such motion, the trial court must consider only the evidence and reasonable inferences therefrom most favorable to the non-moving party. *Ortho Pharmaceutical Corp. v. Chapman* (1979) Ind.App., 388 N.E.2d 541; *Gregory v. White Truck and Equipment Co., Inc.*, (1975) 163 Ind.App. 240, 323 N.E.2d 280.

403 N.E.2d at page 852.

In turning to the facts of the present case, both parties appear to agree that *Kenefick v. Schumaker*, (1917) 64 Ind.App. 552, 116 N.E. 319, provides the basis for what little modern law there is on the subject of marketable title. In *Kenefick*, the court,

after reviewing the standard espoused by commentators and applied in other jurisdictions, determined that the controlling test and more reasonable rule is that a title "which has no defects of a serious nature, and none which affect the possessory title of the owner, ought to be adjudged marketable." 64 Ind.App. at 565, 116 N.E. at 323. The court continued, however, to clarify what it meant by a serious defect.

In such a title there is no room for reasonable doubt; no question as to peaceable possession; no indication of superior rights; nothing to suggest adverse claims, or probable litigation. For these, one and all, would be matters of a serious nature and in such a title [marketable] it is expressly declared that defects of such a nature do not exist. 64 Ind.App. at 565, 116 N.E. at 323.

What we are faced with in this case is a violation of between one-tenth of a foot and one foot six-tenths depending upon which restrictive covenant would be found controlling. The question that must be addressed is whether a title is marketable as a matter of law, notwithstanding a clear violation of a restrictive covenant.

A court of equity will not compel a purchaser to accept a title which is so doubtful that it may expose him to litigation, though the court may believe it to be good. *Smith v. Turner*, (1875) 50 Ind. 367. One who contracts for the purchase of real property is not bound to accept a doubtful title, or one that would likely be involved in litigation, although it might ultimately be adjudged to be good. *Morris v. Goodwin*, (1891) 1 Ind.App. 481, 27 N.E. 985. This same general view of marketability is followed in our sister states, as it is generally agreed that a marketable title is one which is free from reasonable doubt and will not expose the party who holds it to the hazards of litigation. *Darby v. Keeran*, (1973) 211 Kan. 133, 505 P.2d 710; *Edwards v. St. Paul Title Ins. Co.*, (1977) Colo.App., 563 P.2d 979. Based upon this view of marketability, we do not believe that purchasers of real property who bargain for marketable title can be forced to accept property with an

admitted cloud on the title. *See Fajen v. Powlus,* (1977) 98 Idaho 246, 561 P.2d 388.

 When viewed in this regard, it is evident that although the title defect is small, it is nonetheless a cloud on the title that may expose Buyers to the possibility of litigation due to the remedies available to other landowners in the subdivision. Even though a damage recovery may be nominal, Buyers would still incur the cost of defending against any litigation. Absent waivers from all landowners holding Buyers harmless, the possibility of litigation on the matter will not end until the running of the twenty year statute of limitations. Consequently, with the admitted cloud on the title, we are not prepared to say that the title was marketable as a matter of law. Therefore, because the standards of T.R. 50 were met, the trial court did not err in granting Buyers' motion for judgment on the evidence as to Sellers' complaint.

The second issue with which we must deal concerns the trial court's ruling on Buyers' counterclaim prior to the presentation of any evidence by the Buyers. We agree with Buyers, that the court erred in awarding judgment to Sellers on Buyers' counterclaim prior to the presentation of any evidence.

T.R. 13(A) requires a compulsory counterclaim when the action arises out of the occurrence or transaction that is the subject matter of the opposing party's claim. Failure to bring a compulsory counterclaim may result in the action being barred by the doctrine of res judicata. *See Middelkamp v. Hanewich,* (1977) Ind.App., 364 N.E.2d 1024.

On their counterclaim, Buyers had the burden of proof to present evidence of damages incurred as a result of Sellers' failure to provide a marketable title. Further, the trial rules provide that the first time a judgment on the evidence can be granted is after the party with the burden of proof or of going forward with the evidence has completed the presentation of his evidence. T.R. 50(A)(1). We fail to perceive how a motion for judgment on the

evidence can be granted as to the counterclaim, when Buyers, who had the burden of proof, were not able to present any evidence as to their claim.

Therefore, the decision of the trial court in finding for Sellers and against Buyers on Buyers' counterclaim is reversed and remanded for a new trial. The decision of the trial court in granting Buyers' motion for judgment on the evidence as to Sellers' complaint is affirmed.

Judgment affirmed in part; reversed in part.

NEAL and RATLIFF, JJ., concur.